## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOHNATHAN LOWENSTEIN,** | |
| *Plaintiff,* | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGMENT** |
| **v.** | |
| **WIP ECOM, LLC d/b/a CARHARTT WORK IN PROGRESS (WIP),** | **Demand for Jury Trial** |
| *Defendants.* | |

Plaintiff Jonathan Lowenstein ("Lowenstein" or "Plaintiff") for his complaint against Defendants WIP ECOM, LLC d/b/a Carhartt Work In Progress (WIP) ("Carhartt WIP" or "Defendant") by and through his undersigned counsel, alleges upon personal knowledge as to its own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows:

### I. INTRODUCTION

1.      This is a civil action for copyright infringement arising from Defendant's willful and unauthorized creation, reproduction, distribution, and commercial display of a derivative work that unlawfully incorporates the central, protectable elements of one of Plaintiff's copyrighted editorial photographs, in violation of Plaintiff's exclusive rights.

2.      Plaintiff is an acclaimed freelance visual journalist and filmmaker, while Defendant is a globally recognized clothing and lifestyle brand with millions in assets, approximately 80 retail stores worldwide, including a prominent presence in New York City, and its own in-house marketing department.

3.      In 2023, Defendant unlawfully reproduced the most prominent element of one of Plaintiff's editorial photographs, originally created for journalistic purposes, and used it in a

global advertising campaign without Plaintiff's knowledge or permission. Defendant's logo appeared alongside these unauthorized uses, without accrediting Plaintiff, in advertisements across print and online media, on billboards, bus stops, and subway stations, and in prominent public displays at Defendant's retail outlets—transforming Plaintiff's editorial work into a commercial tool.

4.      Despite Defendant assuring Plaintiff that it had "put a pause" on its use of the infringing work following Plaintiff's objection, Plaintiff later discovered that Defendant allowed many of the uses to continue.

5.      Unfortunately, Defendant's continued refusal to pay Plaintiff a licensing fee commensurate with its extensive use of the infringing work has made litigation unavoidable.

6.      Plaintiff therefore seeks a remedy for: (a) Defendant's direct infringement of his copyrighted photograph; (b) its secondary (contributory/vicarious) infringement arising from the creation and dissemination of the infringing content to nonparties Defendant engaged as part of its marketing campaign, including magazine publishers, outdoor advertising companies, or independent contractors; and (c) its intentional removal or alteration of Plaintiff's copyright management information ("CMI") in the course of committing the underlying infringement(s), with the knowledge that such actions would enable, conceal, or facilitate the direct infringement of his copyrighted work.

7.      In carrying out its wrongful conduct, Defendant's conduct has shown a brazen and reckless disregard for Plaintiff's rights, thereby warranting enhanced statutory damages for willful copyright infringement.

## II. THE PARTIES

2

8.      Plaintiff Jonathan Lowenstein, a resident of Chicago, Illinois, is the sole owner of the copyrighted photograph that Defendant unlawfully appropriated in violation of Plaintiff's exclusive rights under the Copyright Act.

9.      Defendant Carhartt WIP is a New York for-profit corporation (NY DOS ID: 4666863) that maintains its principal place of business at 401 Broadway, Suite 1401, New York, New York 10013.

10.     Whenever in this complaint it is alleged that Carhartt WIP committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, employees, contractors, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of that Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, employees, contractors, subsidiaries, or affiliates.

## II. JURISDICTION AND VENUE

11.     This is a civil action for copyright infringement under the Copyright Act of 1976 (the "Copyright Act" or the "Act") and 17 U.S.C. §§ 101 *et seq.* and 505 *et seq.*

12.     Plaintiff also makes claims for copyright management information ("CMI") violations pursuant to 17 U.S.C. §§ 1202 and 1203 *et. seq.*, for each instance the photograph at issue in this case was used and its CMI information was deleted, altered, or removed.

13.     This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

14.     This Court has *in personam* jurisdiction over Defendant because the Carhartt WIP availed itself of the privileges of conducting business in this District and the State of New York and incurred benefits from the alleged infringement, such that this Court's assertion of jurisdiction over Carhartt WIP does nothing to offend traditional notions of fair play and due process.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c), 28 U.S.C. § 1400(a) (venue for copyright cases), and 35 N.Y.C.P.L.R. §§ 302(a)(1)-(3) because Defendants (1) maintain their North American headquarters, or other significant offices, and a flagship retail outlet in this District, (2) conduct sales and marketing expressly aimed at residents of the State of New York and of this District, and (3) caused harm in this District to Plaintiff.

## IV. FACTUAL ALLEGATIONS

**A. The Importance of US Copyright and Bundle of Rights**

16.     Copyrights are the legal title to intellectual property by which creators of original works, such as documentary films, protect their exclusive moral and economic rights to exploit those works.

17.     Respecting and defending the financial value and exploitation rights of creators' copyrighted works is a bedrock of US democracy, considered so important that the Founders enshrined the U.S. Constitution with specific references to copyrights, and which expressly gave Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

18.     The United States Supreme Court found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

19.     Section 106 of the Copyright Act (the "Act") grants copyright owners exclusive economic rights over their works. These rights include the exclusive ability to reproduce (i.e., copy), distribute to the public, publicly display, publicly perform, and create derivative works—the author's *bundle of rights*. The Act also provides for damages if any of these rights are infringed, except in certain, limited circumstances.

**B. Background on Plaintiff & the Photograph**

20.     Plaintiff Jonathan Lowenstein is a highly respected independent American visual journalist, commercial photographer, and filmmaker from Chicago, Illinois. His documentary work is widely acclaimed for confronting complex issues such as wealth inequality, structural racism, and systemic violence. Throughout his career, Mr. Lowenstein has earned many industry accolades, including top awards from World Press Photo, the National Press Photographers Association, and Pictures of Year International, and held prestigious positions such as Innovation Director at the Center for Collaborative Investigative Journalism, National Geographic Explorer, TED Senior Global Fellow, and Guggenheim Fellow. Currently, Mr. Lowenstein is a Nikon Ambassador and co-owner of the global photo agency NOOR.

21.     Through NOOR[1] and his professional website,[2] Mr. Lowenstein sells fine art editions of his photographs and solicits commissioned work, commercial and editorial

---

[1] *See*: www.noorimages.com/jon-lowenstein.
[2] *See*: https://www.jonlowenstein.com/.

assignments, speaking engagements, and licenses for the use of his work as his primary source of income.

22.     In November 2000, as part of the historic, year-long CITY 2000 (Chicago In The Year 2000) time capsule project, Mr. Lowenstein documented the Don "Magic" Jaun Player's Ball on the south side of Chicago, an extravagant annual event celebrating "pimps, players, hustlers, gangsters, and celebrities" [3] which had recently gained national attention in the highly influential 1998 documentary film *Pimps Up, Ho's Down*.[4]

23.     One of the more notable photographs Mr. Lowenstein took of Bishop Don "Magic" Juan that evening is titled *Hands Touching at the Player's Ball* (the "Photograph" or "Photo"), and now permanently resides in the University of Chicago's Comer Archive of Chicago in the Year 2000, where it is clearly identified as Mr. Lowenstein's work and remains publicly viewable today.[5]



---

[3] The event is described in an article published on Salon.com by Denise Dowling, titled *Pimpin' Is Hard Work*, published on January 29, 2000, available at: https://web.archive.org/web/20091207025850/http://archive.salon.com/health/sex/urge/2000/01/29/pimps.
[4] *Pimps Up, Ho's Down*, as cataloged by Turner Classic Movies: https://www.tcm.com/tcmdb/title/470400/pimps-up-hos-down#overview.
[5] *See*: https://collections.carli.illinois.edu/digital/collection/uic_city/id/5039/rec/1.

24.     In 2003, Mr. Lowenstein registered *Hands Touching at the Player's Ball* with the United States Copyright Office as part of a collection titled "Chicago Pictures," which included many other then-unpublished photographs he had taken in Chicago during that period. The certificate bears the Registration Number VAu000584884 and an Effective Date of March 18, 2003.

**C.  Defendant's Wrongful and Infringing Conduct**

25.     Sometime in July 2023, Mr. Lowenstein became aware of an international advertising campaign by the popular clothing brand Carhartt WIP that used an illustration (the "Illustration") incorporating the focal point of his photograph *Hands Touching at the Player's Ball* (the extended hands and interlocked fingers) without his permission. This campaign featured the Illustration alongside the Carhartt WIP logo on billboards, signs, and in print and online media, including public displays at Carhartt WIP retail outlets.

 





26.    To be certain that the Illustration used in the Carhartt WIP campaign indeed usurped the central focus of *Hands Touching at the Player's Ball*, Mr. Lowenstein created an overlay to align the two images. The result was undeniable.



27.    While there may be a few minor alterations (a ring here, a coat cuff there), the striking similarity between the central focus of the Carhartt WIP Illustration and *Hands Touching at the Player's Ball* is such that an ordinary observer would likely agree that the Carhartt WIP Illustration unmistakably captures the overall concept and feel of Mr. Lowenstein's original photograph.

28.    Plaintiff's authorship information accompanies the Photo in the CITY 2000 archive, where it resides, and is viewable to the public:[6]



29.    Upon information and belief, in creating the unauthorized derivative Illustration, Carhartt WIP removed Mr. Lowenstein's authorship and other identifying information, causing all subsequent uses of the derivative Illustration to omit this information, more likely than not with the intent to obscure its illicit origin, and to enable, conceal, or facilitate the unauthorized nature of its continued use.

---

[6] *Id.*

10

30.     In mid-July 2023, Mr. Lowenstein personally contacted Carhartt WIP via email to announce himself as the owner of the Photo and object to its unauthorized appropriation.

31.     On July 24, 2023, Carhartt WIP representative Tobias Sartor responded to Mr. Lowenstein invoking his rights as copyright holder by acknowledging that the Illustration "appears to have been strongly influenced by your work."

32.     On August 24, 2023, Mr. Sartor emailed Mr. Lowenstein, acknowledging that the advertisement containing the infringing Carhartt WIP Illustration had run in over six hundred thousand (600,000) individual magazine copies worldwide, and promised that the company had "put a pause on" the Illustration's use pending resolution of the matter.

33.     Some of the magazines that featured the advertisement containing the infringing Carhartt WIP Illustration are owned or controlled by entities based in New York, or otherwise target residents of this District.[7]

34.     On September 7, 2023, Mr. Sartor emailed Mr. Lowenstein, acknowledging that the advertisement containing the infringing Carhartt WIP Illustration had also appeared on at least eight (8) billboards.

35.     Despite Carhart WIP's apparent candor regarding the scope of the uses and its promise to cease its use of the offending Illustration, Mr. Lowenstein later discovered additional instances of the Illustration appearing in the company's global social media posts, its globally distributed in-house magazine, and additional third-party magazines—some of which occurred well after the company was on notice of Mr. Lowenstein's objections. These appearances were previously undisclosed by Mr. Sartor, further complicating the situation.

---

[7] *See, e.g*., Office Magazine: https://officemagazine.net/info.

36.     Carhartt WIP's uses of the unauthorized derivative Illustration appear to have continued until at least December 2023.

37.     Without the benefit of discovery, Mr. Lowenstein is unable to fully and accurately account for all uses Carhartt WIP made of the unauthorized derivative Illustration.

38.     Unable to resolve his claims against Carhartt WIP, Mr. Lowenstein has been forced to initiate litigation, incurring additional and unnecessary legal costs.

39.     Had Carhartt WIP approached Mr. Lowenstein for permission to use *Hands Touching at the Player's Ball* in its advertisement, he would have been happy to negotiate a commercial license fee consistent with the intended use, in line with his business model.[8] However, by failing to seek his permission, Carhartt WIP's deprived him of that opportunity and the revenue that would have followed.

40.     The Carhartt WIP Illustration is an unauthorized derivative work of Mr. Lowenstein's copyrighted Photo that Carhartt WIP created through its in-house marketing department, and subsequently copied, displayed, and distributed to a global audience for commercial purposes.

41.     By exploiting Mr. Lowenstein's copyrighted Photo without a license, permission, or legal excuse, and with full knowledge that such authorization was required by law, Carhartt WIP has willfully infringed Mr. Lowenstein's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

**D. Background on Defendants**

---

[8] Particularly as the element of the Photo appropriated by Carhartt WIP did not display a discernable face or other personally identifying features, meaning that a commercial model release from the subjects in the Photo would not have been necessary.

42.    Carhartt WIP, established in 1994, is a streetwear clothing company that caters to those who appreciate the utilitarian/workwear aesthetic of the legendary American brand Carhartt but seek a more fashion-forward, streetwear sensibility.

43.    In a 2015 interview, Carhartt WIP founder Edwin Faeh differentiated Carhartt WIP from the primary Carhartt brand by explaining that while Carhartt focuses on "workwear," Carhartt WIP is focused on "streetwear":[9]

> *We are very proud that the toughest men in America are wearing Carhartt workwear to do their daily job. [...] The early adopters [of Carhartt WIP streetwear] were the hip-hop community as well as graffiti writers and skateboarders in New York. So we have been supporting these cultures since the very beginning and that's why we have our respected skateboard team since 1996 and run a successful street art gallery [...] as well as our music division with Carhartt Radio, so we have always and will also in the future work very closely together with these scenes as we are also part of it. [...]The active worker wears original Carhartt workwear from USA, while the skaters wear the Carhartt WIP products which have been adjusted to the action live of a cultural sport.*

44.    Carhartt WIP maintains its primary manufacturing hub in Tunisia but works "with a network of global suppliers and manufactures"[10] to create the clothing it sells directly to consumers, both through its brick-and-mortar stores or its online platform,[11] and through third-party retailers such as Urban Outfitters and Nordstrom, among many others.[12]

45.    Upon information and belief, Carhartt WIP holds millions of dollars in total assets and currently operates approximately 80 brick and mortar locations in various countries across Europe, Asia, Australia, North America, [13] including in New York City.[14] In addition to this, the

---

[9] *How Carhartt WIP is Providing a Voice for the Working Class*, Hypebeast (Oct. 30, 2015), *available at*: https://hypebeast.com/2015/10/carhartt-wip-edwin-faeh.
[10] *See*: https://www.carhartt-wip.com/en/service/csr/where-its-made.
[11] *See*: https://us.carhartt-wip.com/pages/stores.
[12] *See*: www.urbanoutfitters.com/en-gb/brands/carhartt-wip, and www.nordstrom.com/brands/carhartt-work-in-progress.
[13] *See*: https://us.carhartt-wip.com/pages/about.
[14] 286 Lafayette Street, New York, NY 10012 (https://us.carhartt-wip.com/pages/store-newyork).

company also manages an in-house marketing department that creates a variety of traditional and nontraditional promotional media, finances its own skateboarding team, and engages in corporate collaborations with notable entities such as Nike and Motown Records, among others.[15]

46.    Carhartt WIP also maintains centralized corporate offices in New York City. As a recent job posting seeking an "IT Generalist" stated:[16]

> The IT Generalist is responsible for day-to-day technical support (hardware, network, etc.) in support of Carhartt WIP's external managed IT support team. The role is in primary support of the NY Corporate office with remote support of all other North American locations (retail stores and showrooms).

47.    Carhartt WIP holds a significant portfolio of intellectual property assets that are central to its brand identity. These assets encompass its distinctive logos, clothing designs, marketing materials, and other media content that define the brand's unique blend of utilitarian workwear and fashion-forward style.

48.    By enforcing its intellectual property rights in these assets, Carhartt WIP maintains control over its brand's image and the use of its proprietary materials.

49.    Carhartt WIP utilizes a copyright disclaimer on its website ("© WIP Ecom LLC, All rights reserved")[17] and on the social media accounts where it publishes the media it produces (e.g., "© 2024 Work in Progress Textilhandels GmbH" on videos posted to its YouTube channel),[18] demonstrating another context in which Carhartt WIP understands the importance of copyright protection of its intellectual property.

50.    Carhartt WIP's global operations and established market presence demonstrate its sophisticated understanding of both international commerce and intellectual property rights. As a

---

[15] *See*: https://us.carhartt-wip.com/pages/about.
[16] *See*: https://us.carhartt-wip.com/pages/jobs-it-generalist-new-york-ny.
[17] *See*: https://us.carhartt-wip.com/pages/terms-conditions.
[18] *See*: https://www.youtube.com/watch?v=Y-jq92H0Yy8.

company deeply embedded in the competitive fashion industry, and with its own longstanding in-house marketing division, Carhartt WIP was, or should have been, fully aware of its legal obligations under the Copyright Act.

51.     Carhartt WIP's extensive experience in creating, marketing, and protecting intellectual property means it knew or should have known that its unauthorized use of Mr. Lowenstein's copyrighted Photo was a clear violation of his rights, yet it chose to proceed recklessly or with willful blindness as to those rights.

52.     No American legal doctrine grants corporations, even prominent entities like Carhartt WIP, immunity from liability for copyright infringement simply because the infringement was carried out by an employee or agent.

53.     Because Carhartt WIP has shown a brazen and reckless disregard for Mr. Lowenstein's rights in achieving the full scope of the infringements described herein, enhanced statutory damages for willful copyright infringement are warranted.

## V. FIRST CAUSE OF ACTION
## (DIRECT INFRINGEMENT OF COPYRIGHT)

54.     Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

55.     Plaintiff is, and at all relevant times has been, the copyright owner with exclusive rights under United States copyright with respect to the Photo, in which it enjoys a valid registration.

56.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce (copy), distribute, display, perform, and create derivative works from his copyrighted Photo per 17 U.S.C. §§ 106.

57.    Without Plaintiff's permission or consent, Defendant created—or caused to be created— a derivative work based on Plaintiff's Photo *Hands Touching at the Player's Ball* (i.e., the Illustration). Defendant then copied, distributed, and displayed—or caused to be displayed— this unauthorized derivative work in various media worldwide, including in the State of New York, as part of an advertising campaign for its brand.

58.    While predominantly a documentary photographer and filmmaker, Plaintiff occasionally creates or licenses works for commercial purposes when the fee is appropriate. Plaintiff contends he would have done so for Defendant's use of *Hands Touching at the Player's Ball*, particularly since it would not have required a model release from the Photo's subjects.

59.    Defendant's unauthorized use of the Photo deprived Plaintiff of a license fee that he would have otherwise feely negotiated, commensurate with its intended use.

60.    Defendant's acts violated Plaintiff's exclusive right to reproduce, distribute, publicly display, publicly perform, and/or make derivative works of the Photo.

61.    Defendants never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Plaintiff operating a profile on a photo agency's public website, his own public website, and numerous social media accounts where, *inter alia*, he solicits offers from potential licensors and can be contacted about such.

62.    Defendant never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Defendant knowing Plaintiff to be the Photo's author.

63.    Plaintiff never authorized Defendant or its partners, agents, employees, contractors, members, licensees, affiliates, customers, subscribers, or retailers to use, copy, publicly display, distribute, license, manipulate, or otherwise exploit the Photo.

64.     Plaintiff is informed and believes that the foregoing acts of infringement have been reckless and in total disregard of and with indifference to the rights to Plaintiff's copyrights and exclusive rights under copyright.

65.     Plaintiff has suffered damages as a direct and proximate result of Defendant's infringement of his copyrighted Photo.

66.     As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profits pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c), which amounts will be proved at trial.

67.     Plaintiff is entitled to recoup costs incurred in litigating these infringements, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

68.     Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendants and any persons acting in concert with the Defendants.

## VI. SECOND CAUSE OF ACTION
### (CONTRIBUTORY AND/OR VICARIOUS INFRINGEMENT OF COPYRIGHT)

69.     Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

70.     To the extent that a direct infringement of any of Plaintiff's bundle of rights in his Photo, as alleged herein, is attributable to a party other than Defendant, Plaintiff pleads, in the alternative, that Defendant is secondarily liable for that direct infringement, as follows.

71.     Defendant had the right and ability to supervise and control the direct infringements alleged herein, as it fully controls its in-house marketing division. This division created the derivative Illustration and managing the global marketing campaign that led to the unauthorized use of Plaintiff's copyrighted Photo in various nonparty media outlets around the world, including magazines, billboards, and other platforms. To the extent that any direct infringement is deemed to have been committed by a third party—such as magazine publishers, outdoor advertising companies, or independent contractors—Defendant had the right and ability to oversee and prevent such infringement. At best, Defendant recklessly failed to monitor the actions of these entities, and at worst, it actively facilitated their infringing conduct by providing the infringing derivative Illustration.

72.     Defendant had a direct financial interest in the direct infringements alleged herein, as the use of the infringing Illustration was central to a global marketing campaign designed to increase brand awareness and drive consumer purchases of Defendant's commercial products. The campaign directly benefited Defendant through increased profits and market presence, making its financial interest in the use of Plaintiff's copyrighted work, indisputable.

73.     Defendant enabled, induced, facilitated, materially contributed to, or directly assisted in the direct infringements alleged herein because, through its in-house marketing department, it directed, authorized, or actively participated in the creation and distribution of the infringing derivative Illustration. Defendant's marketing department not only spearheaded the global campaign but also engaged nonparty entities, such as publishers, outdoor advertising companies, or independent contractors, in furtherance of the infringing activities, ensuring that the unauthorized use of Plaintiff's work was widely disseminated.

74.    Defendant further enabled, induced, facilitated, materially contributed to, or directly assisted in the direct infringements alleged herein by providing substantial funding through capital, technology, personnel, and other resources; exercising control or management over its in-house marketing department, which directed the campaign and engaged any nonparty infringers; or offering business, legal, strategic, or operational guidance that supported and furthered the unauthorized use of Plaintiff's copyrighted work.

75.    Defendant knew or had reason to know of the direct infringements alleged herein because it exercises full control over the daily operations and business making decisions of its in-house marketing department, which directed or engaged any nonparty that contributed to the infringing activities. Defendant's oversight of the department, which was integral to the execution of the global marketing campaign, gave it direct insight into the unauthorized use of Plaintiff's copyrighted work.

76.    For the aforementioned reasons, Defendant is contributorily and/or vicariously liable for any infringement alleged herein that is found not to be directly attributable to Defendant.

77.    Plaintiff suffered damages as a direct and proximate cause of Defendant's indirect infringement of his copyrighted Photo.

78.    As a result of Defendant's indirect infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profits pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c), which amounts will be proved at trial.

79.    Plaintiff is entitled to recoup costs incurred in litigating these indirect infringements, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

80.     Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting indirect infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendants and any persons acting in concert with the Defendants.

## VII. THIRD CAUSE OF ACTION
### (COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS)

81.     Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

82.     This cause of action stems from the Defendant's violations of Plaintiff's Copyright Management Information ("CMI") pursuant to 17 U.S.C. § 1202 *et seq*.

83.     As explained in greater detail above, the accessible version of Plaintiff's Photo contained copyright management information protected under 17 U.S.C. § 1202, such as metadata or text referencing Plaintiff's name, the title of the Photo.

84.     As explained in greater detail above, upon information and belief, Defendant deleted or removed Plaintiff's CMI from the Photo during the creation of the unauthorized derivative Illustration, which it subsequently distributed or otherwise used with full knowledge of the removal, in violation of 17 U.S.C. § 1202(b).

85.     Defendant's removal of Plaintiff's CMI from the Photo and its subsequent uses of the derivative Illustration without Plaintiff's CMI were undertaken without Plaintiff's knowledge or consent.

86.     As a sophisticated commercial media producer, Defendant had reasonable grounds to know that removing Plaintiff's CMI from the unauthorized derivative Illustration of

his copyrighted Photo would induce, enable, facilitate, or conceal the unauthorized creation of the derivative work, as well as all subsequent uses of it.

87.     As a result of Defendant's wrongful conduct alleged herein, pursuant to 17 U.S.C. § 1203(c)(2), Plaintiff is entitled to recover from Defendant the damages he sustained, and will sustain, along with any profits and advantages obtained by Defendant due to its violation of 17 U.S.C. § 1202, including attorney's fees and costs.

88.     Alternatively, Plaintiff may elect to recover statutory damages from Defendant pursuant to 17 U.S.C. § 1203(c)(3) for each violation of 17 U.S.C. § 1202, with a minimum of $2,500 and maximum of $25,000 per violation. *See also Sheldon v. Plot Commerce*, No. 15CV5885CBACLP, 2016 WL 5107072, (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15CV5885CBACLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016), which defines each instance of a CMI violation, such as distribution, as a separate offense subject to a separate award of damages.

89.     While discovery is required to confirm the precise number of CMI violations committed by Defendant, Plaintiff alleges that each instance in which Defendant distributed the unauthorized derivative Illustration to a third party as part of its global marketing campaign constitutes a distinct violation of 17 U.S.C. § 1202. Each act of distribution, whether to media outlets, outdoor advertising companies, or any other third-party platform, furthered the concealment and facilitation of the infringing work's unauthorized use. Accordingly, each such distribution, made without Plaintiff's copyright management information, constitutes a separate violation under the statute and is subject to a distinct award of statutory damages.

90.     Further irreparable harm is imminent as a result of the Defendant's conduct toward Plaintiff's CMI is without an adequate remedy at law. Plaintiff is therefore entitled to an

injunction, in accordance with 17 U.S.C. § 1203(b), restraining the Defendants, its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with the Defendant, from engaging in further such violations of the DMCA.

91.     Plaintiff is entitled to recover attorney's fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## VIII. JURY TRIAL DEMANDED

92.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## IX. RELIEF REQUESTED

93.     WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.     That an Order be entered against the Defendant for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101, 501 *et seq.* by infringing Plaintiff's copyright in his Photograph, whether directly or indirectly, as described herein;

b.     That an Order be entered against the Defendant for violating the provisions of the Copyright Act, 17 U.S.C. §§ 1202 *et seq.* by committing copyright management information violations in connection with its use of Plaintiff's Photograph, as described herein;

c.     Awarding Plaintiff damages derived from the infringing acts described herein, in the maximum amount permitted by law with respect to each instance of Defendant's infringing use of the Photo, whether pursuant to actual damages and profits under 17 U.S.C. § 504(b) or statutory damages under 17 U.S.C. § 504(c), including attorneys' fees and costs;

d.   Awarding Plaintiff damages derived from Defendant's violations of 17 U.S.C. §§ 1202(a) and 1202(b) described herein, in the maximum amount permitted by law with respect to each instance of Defendant's violation of Plaintiff's CMI, whether pursuant to actual damages and profits under 17 U.S.C. § 1203(c)(2); or (ii) a minimum of $2,500 per violation and maximum of $25,000 per violation of 17 U.S.C. § 1202 under 17 U.S.C. § 1203(c)(3);

e.   Granting Plaintiff injunctive and other equitable relief enjoining Defendant, their respective officers, agents, vendors, servants, contractors, and employees, and all those acting in concert from directly or indirectly reproducing, publicly performing, publicly displaying, publicly distributing, or creating derivative works of, the copyrighted Photo pursuant to 17 U.S.C. §§ 502 and 1203(b)(1);

f.   Awarding prejudgment interest to the maximum extent permitted by law;

g.   Awarding Plaintiff's attorneys' fees, costs, and expenses in this action derived from Defendant's infringing acts pursuant to 17 U.S.C. §§ 505 and 1203(b), and/or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; and

h.   Awarding such other and further relief as the Court may deem just and proper.

Dated: October 5, 2024.

Respectfully submitted,

_By: /s/ Bryan Hoben_
HOBEN LAW
Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
347-855-4008
bryan@hobenlaw.com

_Attorneys for Plaintiff Jonathan Lowenstein_